## Ogilvie's Estate.

*War Risk Insurance — Designating beneficiary by will — Distribution to next of kin—Bequest to fiancee.*

1. Under the Federal War Risk Insurance Act of Oct. 6, 1917, and its amendments of 1924 and 1925, the insured has no power to dispose of the proceeds of the policy by will to persons outside the classes designated in the acts.

2. Where the beneficiaries named have received the usual allotments during their lives, the remaining unpaid instalments will be paid to a personal representative of the insured's estate, to be distributed to the next of kin of the insured in case of intestacy.

3. The insured has no power to bequeath by will the proceeds of the policy to his fiancee.

Exceptions to distribution of decedent's estate. O. C. Butler Co., Sept. T., 1927, No. 77.

*John B.* and *Thomas H. Greer,* for exceptants.

*Benjamin R. Williams* and *C. M. Connelly,* for accountant.

HENNINGER, P. J., July 12, 1927.—Lester W. Ogilvie, a resident of Butler County, Pennsylvania, while a soldier in the World War, on Nov. 24, 1917, made application in the usual form for War Risk Insurance under the provisions of an Act of Congress approved Oct. 6, 1917, 40 Stat. at L. 398. In the application he designated his father, F. S. Ogilvie, as beneficiary. On the

same day and based upon his said application, the said soldier received a certificate of insurance issued by the War Risk Insurance Bureau in the sum of $10,000, payable in 240 monthly instalments of $57.50 each. The soldier died Oct. 21, 1918, survived by his father but neither wife, child or grandchild. The monthly payments were made to his father until his death, Sept. 2, 1920, and were thereafter made to the soldier's grandmother, Hannah Ogilvie, until her death, June 6, 1926. On Oct. 16, 1926, one Margaret Joy Houston, not being of kin to the soldier, but alleged to have been his fiancee, probated what purports to be a copy of the soldier's last will and testament, upon which probate letters testamentary were granted to her, she being the sole legatee and the executrix mentioned in the will. Sometime after the letters were granted, the United States Veterans' Bureau paid to her, as executrix of Lester W. Ogilvie, deceased, the present value of all unpaid monthly instalments on the War Risk Insurance certificate. She has filed her final account showing a balance of said insurance fund in her hands at $6931.20. This fund is now before us for distribution. Said Margaret Joy Houston is claiming it by virtue of the said will. The next of kin of Lester W. Ogilvie are claiming it by virtue of the terms of the War Risk Insurance contract and the intestate laws of Pennsylvania.

The War Risk Insurance contract under which this money was paid to the executrix consists of the application made by the soldier for war risk insurance, the certificate issued thereon by the War Risk Insurance Bureau, the War Risk Insurance Act and its amendments and the rules and regulations of the War Risk Insurance Bureau and its successor, the United States Veterans' Bureau. The application contains the following: "In case any beneficiary should die or become disqualified after becoming entitled to an instalment, but before receiving all instalments, the remaining instalments are to be paid to such person or persons within the permitted class of beneficiaries as may be designated in my last will, or, in the absence of such will, as would, under the laws of my place of residence, be entitled to my personal property in case of intestacy."

The certificate of insurance contains the following: "This insurance is granted under the authority of the Act approved October 6, 1917, and subject in all respects to the provisions of such act or any amendments thereto and of all regulations thereunder now in force or hereafter adopted. All of which, together with the application for this insurance and the terms and conditions published under authority of the act, shall constitute the contract."

The Act of Oct. 6, 1917, authorized the War Risk Insurance Bureau to make and publish regulations not inconsistent with the act, and Bulletin No. 1, published under the authority of said act, is as follows: "If no beneficiary within the permitted class be designated by the insured, either in the insured's lifetime or by his last will and testament, or if any designated beneficiary does not survive the insured, or if any beneficiary shall survive the insured but shall not receive all the instalments, then the remaining instalments shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the insured's place of residence, be entitled to his personal property in case of intestacy."

The said Act of Oct. 6, 1917, contains the following provisions: "The insurance shall be payable in two hundred forty monthly instalments of $57.50 each, and shall be payable only to a spouse, child, grandchild, parent, brother or sister. Subject to regulations, the insured shall at all times have the right to change beneficiaries without the consent of the beneficiaries, but only within the class hereinafter permitted. If no beneficiaries within the

permitted class be designated by the insured, either in his lifetime or by his last will, or if the designated beneficiary does not survive the insured, the insurance shall be payable to such person or persons within the permitted class of beneficiaries as would, under the laws of the state of the residence of the insured, be entitled to his personal property in case of intestacy. If no such persons shall survive the insured, then there shall be paid to the estate of the insured an amount equal to the reserve value of the insurance at the time of his death. . . . The insurance shall not be assignable and shall not be subject to the claims of the creditors of the insured or of the beneficiaries."

The above-quoted provisions are all part of the contract of insurance under which the money before us for distribution was paid. The Government is the insurer, not by way of conducting an insurance business, but for the sole purpose of protecting its service men and their dependents. This insurance contract has some of the features of a contract and some of the features of a pension. The Government, on account of its generosity, supervises and selects the parties who shall be protected. The whole scheme is declared in the act to be entered upon by the Government "in order to give every commissioned officer and enlisted man, and to every member of the Army Nurse Corps and of the Navy Nurse Corps, when employed in active service, protection for themselves and their dependents."

The provision of the contract that is based upon the bulletin of the bureau was, by the amendment of Dec. 24, 1919, incorporated in the Act of Congress and the permitted class was enlarged so as to include uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law.

An Act of Congress approved June 7, 1924, 43 Stat. at L. 607, is entitled "An act to consolidate, codify, revise and enact the laws affecting the United States Veterans' Bureau and War Risk Insurance Act and the Vocational Rehabilitation Act." This act retains all the terms and conditions of the War Risk Insurance Act, the application and certificate. This act was amended by the Act of March 4, 1925, 43 Stat. at L. 1302, which amendment retained the provisions against assignments and debts, the provisions establishing the permitted class of beneficiaries, and the provision prohibiting the designation of a beneficiary outside of the permitted class, while allowing a change to be made, but does not retain the other terms of the contract in full, but provides that where no beneficiary is designated by the insured, either in his lifetime or by his last will and testament, and that where a beneficiary who has been receiving the instalment dies, the present value of the unpaid instalments shall be paid to the insured's estate. Neither by the contract of insurance nor by any Act of Congress has the insured been given any control over the insurance money by will. The prohibition against assignment is necessarily a prohibition against devising or bequeathing the fund. The only power by will that the insured has is to designate beneficiaries. The insurance money is exempt from creditors of both the insured and his beneficiaries. The insured has no power to divert it from the permitted class. The insurance was intended to protect the insured and his dependents. There is no indication in the Act of 1925 that the Government intended to relinquish its control over the fund or to in any way waive or interfere with the protection it had afforded to the permitted class; while, on the other hand, the act, by designating a permitted class, by forbidding assignments and by restricting the selection of beneficiaries, shows a clear intent to maintain and continue the protection to the permitted class. The only logical conclusion that can be drawn from an interpretation of the Act of 1924 and its amendments of 1925

Ogilvie's Estate.

is that the proceeds of such an insurance contract may only be paid to the next of kin within the permitted class so long as any survive. No person not in the permitted class is entitled to participate in the distribution of the fund if any of the permitted class remain. There is nothing in the act that indicates a change in policy. Protection to the soldier and dependents is the main thought. If Congress intended to throw down the bars and allow the insurance fund to go by will of the insured or to insured's assignee or to the insured's creditors in preference to the permitted class, we would expect that the act would contain such a provision in plain terms. If such were the intention, why would the act retain the permitted class? Why would it prohibit the assignment of the insurance money? Why protect it against the debts of the insured? Why would it prohibit the insured from designating a beneficiary outside of the class? The only logical answer is that no change was intended. Prior to the Act of 1925, the expense and annoyance of distribution by the Government was great. The purpose of the act seems to have been to relieve the bureau from the expense and annoyance in all cases where there was no beneficiary designated, and allow the distribution to be made by the state courts, where the protection so clearly expressed in the act must be preserved and the permitted class recognized and protected. If the Act of 1925 pays the fund to the estate without restriction, the scheme of protection is lost and the fund would pass under the soldier's assignments or by the provisions of his last will and testament, and it would be subject to all his debts and undertakings. A wife, child or parent dependent on him would receive no benefit whatever. Their protection would be wiped away. Before we so construe the law, we should require the release to be expressed in plain and apt terms and not left to inference. Such a construction would violate the very purpose and spirit of the whole scheme of War Risk Insurance and must not be adopted so long as a fair and rational construction is available in harmony with the purpose and scheme of protection. To hold that the payments go to the estate for distribution under the terms and conditions of the insurance contract is to give force and effect to all the provisions of the War Risk Insurance Act and the soldier's contract thereunder and does not violate any of the express terms of the Act of 1925.

Having in view the spirit of the entire legislation on this subject, the terms of the contract as made up from the application, the certificate and the Acts of Congress, we are constrained to hold that the fund in controversy cannot pass under the insured's will, but must be distributed under the intestate laws of Pennsylvania to his next of kin, to the members of the permitted class.

In considering this case we have assumed that all Acts of Congress in force at the present time and dealing with War Risk Insurance became part of the soldier's contract; those enacted after his death as well as those before. We doubt very much whether this assumption is warranted and are inclined to the opinion that only the Act of Oct. 6, 1917, and the rules and regulations made thereunder by the War Risk Insurance Bureau could be part of the contract of insurance.

### Order of court.

Now, July 12, 1927, the fund in the hands of the executrix, Margaret Jo Houston, being the proceeds of a War Risk Insurance contract, to wit: $6931.20, is hereby distributed as follows: To Myra McGonigle, $1732.80; to William F. Ogilvie, $1732.80; to Walter E. Ogilvie, $1732.80; to Charle T. Willmarth, $866.40; to Ida May Dieckman, $866.40.

From Thomas H. Greer, Butler, Pa.